# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN RYAN JONES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> **Acting Commissioner of the Social** ) <br> **Security Administration,**[1] ) <br> ) <br> Defendant. ) | Case No. CIV-16-165-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Kevin Ryan Jones requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 6, 1980, and was thirty-three years old at the time of the administrative hearing (Tr. 39). He completed his GED, and has worked as a house parent, janitor, and data entry clerk (Tr. 84, 219). The claimant alleges he has been unable to work since April 4, 2012, due to diabetes (Tr. 219).

## Procedural History

On October 5, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 14, 2011. His application was denied. ALJ Bernard Porter held an administrative hearing and found that the claimant was not disabled in a written opinion dated July 29, 2014 (Tr. 18-29). Nearly three years later, the Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, that he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; sit/stand/walk for up to six hours each in an eight-hour workday; occasionally use foot controls, climb ramps/stairs, kneel, operate a

motor vehicle; frequently balance, stoop, crouch; and never crawl. Additionally, the ALJ determined that the claimant was unable to read very small print, but that he could read ordinary newspaper for book style prints. Furthermore, the claimant should not work around unprotected heights and moving mechanical parts, work in an environment with temperature extremes, and that he required a sit/stand option allowing for a change in position every thirty minutes. As to his mental impairments, the ALJ limited the claimant to simple tasks, simple work-related decisions, and no more than occasional interaction with supervisors, coworkers, with no interaction with the public, and that he would be off task 5% of the workday and may miss up to one day of work each month (Tr. 23). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, press machine operator, bench assembler, and bakery worker (Tr. 27-28).

**Review**

The claimant argues on appeal that the ALJ erred by failing to meet his step five burden when he failed to demonstrate the existence of work the claimant was capable of and failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational titles. The undersigned Magistrate Judge agrees with the claimant's contentions, and the Commissioner's decision should therefore be reversed and the case remanded for further proceedings.

At the administrative hearing, the ALJ elicited testimony from a VE to determine if the claimant could perform his past relevant work or if there were other jobs the claimant could perform with his limitations. He posed a number of hypothetical

questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age, education, and work history of the claimant, who was

> limited to less than a full range of light work, with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently. Could sit for six hours, stand for six hours, could walk for six hours. Could push and pull as much as they can lift and carry. They're limited to just occasional use of foot controls, occasionally climbing of ramps and stairs, never climb any ladders or scaffolds, could limit their balancing and stooping to frequent, occasional kneeling, frequent crouching, never crawling. I'm going to say unable to read very small print, but could read ordinary newspaper or book style print. They should not work around unprotected heights or moving mechanical parts. They're limited to the occasional operation of a motor vehicle. There's never work in any environments where there are temperature extremes. They would also limit to simple tasks, simple work related decisions, and no more than occasional interaction with supervisors, coworkers, and the public. Time off task would be accommodated by normal breaks.

(Tr. 85). The VE testified that such an individual would not be able to perform his past relevant work, then identified three light, unskilled jobs such a person could perform: (i) press machine operator, DICOT § 690.685-014; (ii) bench assembler, DICOT § 706.684-042; and (iii) bakery worker, DICOT § 524.687-022 (Tr. 85-86). The next hypothetical posited an individual with all the same requirements as the first hypothetical, with the additional limitation of requiring a sit/stand option which allows for change of position at least every thirty minutes (Tr. 86). The VE testified that such a person could perform the previously-identified positions, but stated that only a third of the number of jobs would remain (Tr. 86). Finally, the ALJ proposed a hypothetical where the individual would be off task up to five percent of the day, and may miss up to one day of work each month (Tr. 87). The VE testified that such a person could still perform all

5

three jobs identified (Tr. 87). Additionally, the ALJ elicited no testimony from the VE about whether any of the jobs she identified were consistent with the job descriptions contained in the Dictionary of Occupational Titles ("DOT") (Tr. 83-87). In response to questions from the claimant's representative regarding the claimant's vision, the VE testified that if the claimant's visual acuity was less than frequent, the jobs identified would be eliminated (Tr. 88).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from all three hypotheticals described above (Tr. 23). He then adopted the VE's testimony that the claimant could perform the light jobs of press machine operator, bench assembler, and bakery worker (Tr. 28). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 28).

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the ALJ made a finding that there was no conflict between the VE's testimony and the DOT, there *are* conflicts that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the

[DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Initially, the ALJ should undoubtedly have asked the VE whether there was any conflict between her testimony and the DOT before concluding that there was none, because "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4. The ALJ's failure to do this, however, would be harmless error if there were in fact no conflicts between the VE's testimony and the DOT, *see Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."), but the error was not harmless here because there are conflicts that the ALJ should have resolved.

Here, a conflict exists with all three of the jobs identified by the VE. First, a conflict exists with the jobs of press machine operator and bakery worker, because both require the employee to work in constant (press machine operator) and occasional (bakery worker) proximity to moving mechanical parts. *See* DICOT §§ 690.685-014 (press machine operator), 524.687-022 (bakery worker). As even the Commissioner

7

agrees, these jobs are in direct conflict with the portion of the ALJ's RFC assessment which included a finding that the claimant should not work around moving mechanical parts at all (Tr. 23). Accordingly, both these jobs are precluded by the claimant's RFC.

Finally, a conflict exists with the remaining identified job, bench assembler (DICOT § 706.684-042), in relation to the claimant's visual impairment and the ALJ's assessed RFC. The DOT description for this job requires *frequent* near acuity in vision, where "frequent" is defined as existing from 1/3 to 2/3 of the time. *See* DICOT § 706.684-042. The claimant contends that the ALJ's RFC finding that the claimant was "unable to read very small print, but can read ordinary newspaper or book-style print" is incompatible with this requirement of frequent near visual acuity because the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "near acuity" as "clarity of vision at 20 inches or less." App. C., No. 15. Additionally, this job requires that an individual, as part of their duties, "[f]its parts of components together and fastens them with bolts and cotter pins, using handtools and pneumatic impact wrench." DICOT § 706.684-042.

The Commissioner asserts that the ALJ's RFC assessment "appears" fully consistent with the requirement of clarity of vision at twenty inches or less between 1/3 and 2/3 of the workday, and correctly notes that the ALJ did not include the limitations on visual acuity as proffered by the claimant's representative at the administrative hearing. Additionally, the undersigned Magistrate Judge further notes that the Tenth Circuit has previously stated that "there is no authority to support [an] argument that visual acuity must be stated in terms of far and near acuity," where the ALJ adopted

8

word-for-word the impairment described by that claimant's ophthalmologist. *Nelson v. Colvin*, 655 Fed. Appx. 626, 630 (10th Cir. 2016). Nevertheless, the undersigned Magistrate Judge finds that the claimant's documented foggy vision and need for continued treatment suggest the claimant may not be able to perform the job of bench assembler, and it is not clear it conforms to the claimant's RFC, either. As noted above, in this circuit "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091.

Here, the ALJ did nothing to resolve the apparent conflicts between the VE's testimony and the DOT, and was therefore not entitled to rely on the VE's testimony as substantial evidence. Accordingly, the Commissioner's decision must be reversed and the case remanded for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**